**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **DONTE ANTWAUN HERRING and** | * | **CRIMINAL NO. GLR-21-120** |
| **XAVIER JEFFREY JONES,** | * | |
| | * | |
| **Defendants.** | * | |
| | ******* | |

**GOVERNMENT'S CONSOLIDATED RESPONSE
TO DEFENDANT'S PRE-TRIAL MOTIONS**

The United States of America respectfully submits this consolidated response to the motions filed by Defendants Donte Herring and Xavier Jones in this matter. ECF Nos. 70-73. For the reasons that follow, the Court should deny the motions.

**FACTUAL BACKGROUND**

**I.    December 17, 2020 Robbery.**

On December 17, 2020, at shortly after 7:00 p.m., Jones and Herring entered the Russell Cellular, Verizon store located at 3920 Washington Blvd., Suite 200 Halethorpe, Maryland 21229. After initially posing as customers browsing for cell phones, Jones and Herring eventually announced a robbery, and Herring brandished a semi-automatic firearm—pointing it at the victim employee.

Herring ordered the victim employee to take him and Jones to the store's safe, and the victim complied. They ordered the victim to open the safe. He did so. Jones and Herring then removed various electronic devices from the safe, including multiple boxes of Apple cellular telephones, watches and iPads—worth approximately $27,940.00—and load them into a duffel bag. Herring pointed his firearm at the victim while the safe was unloaded.

Jones then left the store with the stolen devices and got into a Dodge Caravan that had been

reported stolen four days earlier.  Herring then forced the victim employee to leave the area of the store's safe and directed him towards the register.  Herring demanded cash from the register, and the victim employee opened it.  Herring then removed approximately $1,313.00 from the till and left the store.  He and Jones then fled in the stolen Dodge Caravan.  Selected photographs from the store surveillance cameras are below.  Herring can be seen wearing brightly colored New Balance brand sneakers.  He has a Reebok fanny pack slung around his shoulder and is holding a firearm. Jones can be seen wearing a hooded sweatshirt and black Helly Hansen snow pants.





## II.       December 23, 2020 Robbery.

On December 23, 2020, at approximately 1:37 p.m., Rico Dashiell entered the AT&T store located at 10215 Reisterstown Road, Owings Mills, Maryland 21117.  Dashiell initially acted like a customer of the store but, after Jones and Herring entered the store, he brandished a firearm, pointed it towards the victim and stated, "Yeah, you know what time it is."  He also said, "If you don't want to die today, do what I say."  Dashiell was wearing brightly-colored yellow high visibility construction-style clothing.

Jones and Herring likewise brandished firearms after entering the store, pointing them at the victim customer and employees.  They yelled, "get down."  Herring was wearing the same brightly colored New Balance sneakers that he wore during the December 17, 2020 robbery that occurred less than a week earlier.  Herring was wearing the same black Helly Hansen snow pants and hooded sweatshirt that he wore during the earlier robbery.

A victim customer was also ordered to empty his pockets, which he did.  His wallet (containing his driver's license and credit cards) was taken, along with his car keys, which were on an orange STX lanyard, and his phone.

Dashiell then ordered one of the victims to walk to the back room of the store to open the

store safe and escorted the victim to the back room at gunpoint.  Jones and Herring were there already.  They ordered the victim to open the safe, and the victim complied.

Jones and Herring then proceeded to remove nearly all of the electronic devices from the safe—including $48,767 worth of Apple and Samsung Galaxy devices (76 devices total)—and placed them in large black garbage bags they had brought with them.  When Jones and Herring finished emptying the safe, they ordered three victims from the main floor of the store to a different location in the store—the room in the store where the safe was kept.

Dashiell also directed a victim employee to open the store's cash register, which she did. Dashiell then stole $322.00 from the register.  The store ultimately sustained a total loss of $49,089.

Once all three victims were in the room containing the safe, Herring and Jones left the room and, as they left, pepper spray was sprayed in the direction of the victims' faces.  Dashiell, Jones, and Herring then fled the store in a Kia vehicle that Jones earlier that day had stolen from one of his acquittances.  The Kia vehicle was bearing registration tags that law enforcement later determined had been stolen from another vehicle.  Selected photographs from the store surveillance cameras are below:






In addition to the stolen merchandise, the robbers also inadvertently took a 3SI GPS tracker within a cell phone box from the store.  As the robbers fled the store in the Kia vehicle, the tracker was activated and began being tracked by law enforcement.

## III.    Arrest of Defendants And Execution of Search Warrants.

Law enforcement received GPS information concerning the location of the GPS tracker, which they relayed to responding Baltimore County Police Department (BCPD) units, including

aerial aviation units.

The Kia vehicle was ultimately tracked to 5724 Calverton Street, Catonsville, Maryland 21228, a single family residence.  It arrived there at approximately 2:04 p.m.—less than a half hour after the robbery.

Aviation units observed and filmed the robbers—Jones, Herring, and Dashiell—outside the residence unloading the stolen merchandise from the AT&T store and bringing it into the residence.  Specifically, the robbers were observed carrying heavily weighted black plastic trash bags into the residence.  Law enforcement was aware at the time that the suspects in the robbery loaded the phones they took from the store's safe into black plastic bags.  Further, law enforcement observed that one of the suspects (Dashiell) was wearing a bright yellow high visibility construction outfit, substantially identical to the one worn during the robbery.  Also outside the residence was the Dodge Caravan used by the robbers during the December 17, 2020 robbery of the Verizon store, which law enforcement later determined had been stolen.  An aviation photo of the robbers unloading the Kia is below.



Law enforcement then established a perimeter around 5724 Calverton Street.  Thereafter, the owner of the residence called the police and reported that her Kia rental car had been stolen.

Additional law enforcement officers (including tactical units) ultimately responded to the scene and attempted for nearly four hours to make contact with the Defendants.  The Defendants were unresponsive until tactical units deployed tear gas into the residence.  The Defendants left the house shortly thereafter, and they were arrested without incident at approximately 6:00 p.m.

During a search incident to his arrest, law enforcement seized, among other things, $622.16 from Jones ($322 of which was proceeds from the robbery of the AT&T store), along with a round of ammunition.

Law enforcement executed a state search warrant[1] of the residence.  During their search of the residence, law enforcement recovered, among other things, (1) the clothing, gloves, and headwear worn by Herring, Jones, and Dashiell during the robbery of the AT&T store; (2) the 76 devices earlier that day stolen from the AT&T store, along with the 3SI tracker in large garbage bags; (3) the canister of pepper spray used to spray the victims during the robbery; (4) the stolen wallet belonging to one of the victims of the robbery; (5) the three firearms used by Jones, Herring, and Dashiell during the earlier robberies—a black, Taurus, Model PT111G2A, 9 mm, semi-automatic pistol,  SN:TMC06714, loaded with 9 rounds, one chambered; a black, Stoeger, Model STR-9, 9mm, semi-automatic pistol, OBLITERATED Serial Number, loaded with 10 rounds; and a Polymer 80 Gray Grip with a black slide 9mm semi-automatic pistol, with no serial number, which was also loaded; and (6) the black Reebok fanny pack used in connection with both of the robberies.

During a search of the Kia vehicle, also pursuant to a state search warrant,[2] law enforcement seized, among other things, keys on an STX lanyard belonging to one of the victims of the AT&T store robbery earlier that day, various pairs of gloves, and garbage bags identical to

---

[1] *See* Ex. 1 (State Warrant For 5724 Calverton Street)

[2] *See* Ex. 2 (State Warrant For Kia).

the ones used in connection with the robbery.  Law enforcement located the license plate assigned to the Kia vehicle on the rear passenger tire of the Dodge Caravan, which had been parked next to the Kia.

## IV.  Search Warrants for Devices, Cell Site, and Electronic Accounts.

In addition to the warrants they obtained for their searches of 5724 Calverton Street and the Kia vehicle used as the getaway car after the December 23, 2020 robbery, law enforcement also obtained warrants authorizing the search of various devices seized during the execution of the warrants, Ex. 3 (State Warrant for Devices); Ex. 4 (Federal Warrant for Devices), as well as for cell site information and for various electronic accounts, Ex. 5 (Federal Warrant for Cell Site and iCloud Information).

## PROCEDURAL HISTORY

On April 22, 2021, a Grand Jury sitting in the District of Maryland returned a four count Indictment charging Herring and Jones with two Counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Counts One and Three); and (2) two counts of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Two and Four).  The Grand Jury further charged Dashiell with one count of Hobbs Act Robbery (Count Three) and one count of Brandishing a Firearm During a Crime of Violence (Count Four).

On March 31, 2022, Dashiell pled guilty to Counts Three and Four of the Indictment. Sentencing is set for October 28, 2022.

On July 4, 2022, Herring filed a motion to suppress statements.  ECF No. 70.  On July 8, 2022, Jones filed various pre-trial motions.  ECF Nos. 71-73.  All of the defense motions are summarized in the below chart.

| DEFENDANT | MOTION | ECF. # |
|---|---|---|
| Herring | Motion to Suppress Statements | 70 |

| Jones | Motion to Suppress | 71 |
|-------|--------------------|----|
| Jones | Motion to Sever Counts | 72 |
| Jones | Motion Regarding Government 404(b) Evidence | 73 |

A motions hearing is scheduled for September 23, 2022, and a jury trial is scheduled to begin on March 6, 2023.

## ARGUMENT

All of Defendant's motions are either meritless or moot, and therefore the Court should deny them.

## I.   The Motion to Suppress Herring's and Jones's Statements Should be Denied as Moot. (ECF No. 70).

Defendant Herring seeks to suppress his post-*Miranda* statement to law enforcement after his arrest on December 23, 2020.  ECF No. 70.  Defendant Jones does likewise.  ECF No. 71 at 2. The Court can deny these motions as moot, as apart from the booking provided by each Defendant prior to each's interview with law enforcement (*i.e.*, name, age, address, height/weight, phone number[3]), the Government does not intend to introduce any part of any statement at trial.

As for all of the biographical information provided by each defendant before each interview, it all falls within the routine booking exception to *Miranda.  See United States v. D'Anjou*, 16 F.3d 604, 608 (4th Cir. 1994) ("[T]here exists an exception to Miranda's coverage for routine booking questions securing 'biographical data necessary to complete booking or pretrial services,'") (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (plurality opinion)); *see also United States v. Brown*, No. GJH-18-0335, 2020 WL 6393392, at *9 (D. Md. Nov. 2, 2020) (address provided by defendant pre-*Miranda* fell within booking exception).

The Court should thus deny Herring's and Jones's motion to suppress statements as moot.

## II.   Jones's Motion to Suppress Evidence Seized on December 23, 2020 (ECF No. 71 at 2).

---

[3] Only Herring provided a phone number.

As an initial matter, Jones claims—without any elaboration—that the "evidence in this case was seized without reasonable suspicion or probable cause." Jones Mot. at 2. This argument is meritless. Even assuming that Jones has standing to challenge all of the searches in this case[4]— and he does not—his argument fails, as virtually all of the evidence seized from the various locations in this case was seized pursuant to judicially-authorized search warrants supported by more than ample probable cause. *See* Exs. 1-5.

And though Defendant asserts that "the affidavit underlying the warrant(s) did not establish probable cause," ECF No. 71 at 3, Defendant does not point to any specific deficiency or defect in any of the warrants. This is unsurprising, because each of these warrants was facially valid, supported by ample probable cause, and issued by a neutral magistrate. The evidence seized pursuant to these warrants should not be suppressed.

> In reviewing a search warrant application, a magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). "To begin with, warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Clenney*, 631 F.3d 658, 665 (4th Cir. 2011) (internal citation and quotation marks omitted). A court reviewing a magistrate judge's assessment of probable cause must accord his or her decision "great deference," and should not "invalidate a warrant 'by interpreting [an] affidavi[t] in a

---

[4] Each "defendant bears the burden of proving that he has a reasonable expectation of privacy." *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992). And The Defendants have done anything to establish that they have standing to challenge the search of the Calverton Street residence (where none of the Defendants was living at the time) or the Kia vehicle or Dodge Caravan (both of which were stolen). As to the vehicles, there is of course no reasonable expectation of privacy in a stolen car. *Byrd v. United States*, 138 S. Ct. 1518, 1529 (2018).

hypertechnical, rather than a commonsense, manner.'" *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir.), cert. denied, 510 U.S. 983 (1993) (quoting *Gates*, 462 U.S. at 236). "So long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

A commonsense reading of each of the affidavits in this case demonstrates that they were all supported by probable cause. The affidavits set forth the facts of the investigation in detail, tying each of the locations to be searched to specific information obtained in connection with the investigation of the robberies. Each warrant also describes with particularity the place to be searched and the evidence to be seized.[5]

In any event, even if the affidavits in support of the warrants did not establish probable cause—and they do—suppression would still be unwarranted because the good faith exception applies. Indeed, the Supreme Court has held that when officers seize evidence in good faith reliance on a facially valid warrant issued by a magistrate or judge, and the affidavit is later found to lack probable cause, the evidence is not subject to the exclusionary rule of the Fourth Amendment and is admissible in the government's case-in-chief. *United States v. Leon*, 468 U.S. 897 (1984) (affidavit of experienced narcotics officer who acted in reliance on information provided by informant of "unproven reliability" held to lack probable cause, but evidence seized by agent who acted in good faith reliance on the facially valid warrant was not subject to suppression).

---

[5] Indeed, where a warrant identifies the crimes at issue and limits the search for evidence relating to those crimes, courts, including the Fourth Circuit, have consistently found that the particularity requirement has been satisfied. *See, e.g.*, *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010) ("The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant.").

The Fourth Circuit has held that the good faith exception applies to otherwise deficient search warrants except in "egregious cases" such as "when 'the issuing magistrate wholly abandon[s] his judicial role' or when the warrant issued is 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *United States v. Qazah*, 810 F.3d 879, 886-87 (4th Cir. 2015) (quoting *Leon*, 468 U.S. at 922-23)).   The court also held that "in the ordinary course, the exclusion of evidence is not the proper remedy." *Id.*

The good-faith exception applies in most cases, except those where the affidavit provides only minimal, vague information.  *Cf. United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) ("We find that the good-faith exception to the exclusionary rule should not apply in this case due to the 'bare bones' nature of the affidavit[.]").  Indeed, "[s]earches pursuant to a warrant . . .  rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994) (internal quotation marks omitted).

No such "egregious" circumstances or "minimal, vague information" are present here.  No aspect of the affidavits or warrants was deficient, and it was not unreasonable for law enforcement to rely in good faith on them.  Indeed, the facts in each affidavit clearly establish probable cause that evidence related to the robberies will be found at the locations to be searched.  Jones does not establish, or even allege, any grounds on which the supposed deficiencies of the warrants render officers' reliance on the warrants objectively unreasonable, and in fact—apart from a single sentence—does not address the good faith exception at all.

Because the warrants were all supported by probable cause and the officers acted in good faith in securing and executing them, the motions to suppress evidence seized pursuant to the warrants on December 23, 2020 (ECF No. 71 at 2) should be denied.

III.   **The Officers Had Probable Cause to Arrest Jones and the Other Defendants.**

Each of the Defendants in this case was arrested by law enforcement immediately after they exited the residence at 5724 Calverton Street after they had been tracked in real-time by law enforcement after the robbery of the AT&T store and an hours-long standoff with police.  Jones claims that "[a]ny warrantless arrest in this case was conducted without probable cause" and states that "any items seized as a result of the arrest must be suppressed."  ECF No. 71 at 2.

Jones's argument fails.  Because law enforcement had probable cause to believe that Jones had committed or was committing a crime, the arrest of Jones was proper.

An officer may make a warrantless arrest in public when the arrest is supported by probable cause.  *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *United States v. Watson*, 423 U.S. 411, 416-24 (1976). The probable cause standard is a nontechnical, common sense standard "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371. Probable cause to justify an arrest exists when the "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person … in believing … that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Here, there was more than ample probable cause to justify the arrest of Jones, Herring, and Dashiell after they exited 5724 Calverton Street after an hours-long stand-off with law enforcement.  *First*, 5724 Calverton Street was identified by law enforcement when the GPS tracker taken from the AT&T Store came to a complete stop in the area of the residence—leading law enforcement to believe that the device (which had previously been moving in a manner consistent with it with being in a vehicle) was in the area of the home.  *Second*, as the GPS tracking device came to a stop, the BCPD Aviation Unit arrived on scene and observed three black males (later identified as Dashiell, Herring, and Jones) getting out of a Kia vehicle parked to the rear of

5724 Calverton Street next to a maroon Dodge Caravan.  Law enforcement knew that the robbery that had occurred less than a half hour earlier involved three black males, and they likewise knew that the robbers left in a vehicle consistent in appearance with the Kia cross-over style vehicle observed at the Calverton Street residence.  *Third*, the three suspects were observed to be unloading black trash bags from the Kia vehicle and entering the Calverton Street residence, leading law enforcement to believe that the trash bags likely contained the numerous phones stolen from the store.  Indeed, law enforcement learned from investigators on the scene of the robbery that the stolen phones had been loaded into black plastic bags.  *Fourth*, law enforcement observed that the Kia vehicle at the Calverton street residence had no rear license plate on it, leading law enforcement to believe that the plate was potentially removed shortly after the robbery in an effort to distance the car from the robbery that had taken place less than hour earlier.  *Finally*, one of the suspects observed carrying a garbage bag (later identified as Dashiell) was wearing a neon yellow high visibility construction outfit, substantially identical in appearance to the one worn by one of the robbery suspects.

These facts were more than sufficient to justify the arrests of Jones, Herring, and Dashiell at the Calverton Street residence on December 23, 2020. *Cf. United States v. Garraud*, 434 F. App'x 132, 136 (3d Cir. 2011) (per curiam) (vehicle stop proper based on consistency of GPS data from tracker pack taken from bank during robbery and the fact that the race of the driver of the vehicle matched that of the robber); *United States v. Gonzalez*, 311 F. App'x 955, 956 (9th Cir. 2009) (unpublished) (stop and of frisk of driver and passenger of a vehicle proper where vehicle was identified as possibly involved in an armed robbery based on the signal from a tracking device taken during the robbery where the passenger matched the general description of the robber).  At bottom, there is simply no factual basis for the assertion that law enforcement lacked probable cause to arrest Jones.

Incident to a lawful arrest, officers may conduct a full search of the arrestee, regardless of whether he is suspected of possessing weapons or evidence pertaining to the offense for which he is being arrested. *United States v. Robinson*, 414 U.S. 218, 234-35 (1973).  Here, incident to Jones's lawful arrest, officers conducted a search of Jones's pockets and recovered one round of 9mm ammunition his pants pocket. Law enforcement also seized a rose-gold colored iPhone and approximately \$622.00[6] in U.S. currency. Because these items were properly seized during a search incident to a lawful arrest, Jones's motion to suppress these items should be denied too.

### IV.    Jones's Motion to Sever (ECF No. 72) Should be Denied.

Jones has also moved to sever Counts One (Hobbs Act Robbery) and Two (Brandishing a Firearm During a Crime of Violence) from Counts Three and Four of the Indictment, which also charge him with Hobbs Act Robbery (Count Three) and Brandishing a Firearm During a Crime of Violence (Count Four), respectively.  ECF No. 72 at 2-3.

Jones essentially claims that the charges against him arising out of the December 17, 2020 cell phone store robbery should be severed from the charges against him arising out of the December 23, 2020 cell phone store robbery.  *Id.*  Jones' motion to sever can be easily denied.

Under the Federal Rules of Criminal Procedure, an indictment "may charge a defendant in separate counts with two or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "[V]iolations of the same statute"—as here— are "an unremarkable example of offenses of the 'same or similar character'" under Rule 8(a). *United States v. Hawkins*, 776 F.3d 200, 208 (4th Cir. 2015). Likewise, crimes committed on separate days with different victims are nonetheless "of the same or similar character" if the criminal conduct was essentially the same.  *See United States v. Acker*, 52 F.3d 509, 513 (4th Cir.

---

[6] Again, \$322.00 in U.S. currency was stolen during the robbery of the AT&T store earlier that day.

1995) ("Clearly the [four separate] bank robberies were offenses 'of the same or similar character' because the defendant's actions were essentially the same in each robbery.").

Moreover, the Fourth Circuit has interpreted the latter two prongs of Rule 8(a) flexibly, requiring only that the joined offenses have a "logical relationship" to one another. *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005). Because of "the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources," joinder of related offenses is the rule rather than the exception. *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008).

When joinder under Rule 8(a) is proper, "the defendant's only recourse is to convince the Court that the charges should be severed under [Fed. R. Crim. P. 14]—a difficult task." *United States v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011) (citing *Cardwell*, 433 F.3d at 387) (incidents where joinder of offenses is proper, but severance is nevertheless required limited to "rare" case where joinder would "prevent the jury from making a reliable judgment about guilt or innocence")). "A defendant making a motion for severance has the burden of making a strong showing of prejudice, and it is not enough to simply show that joinder makes for a more difficult defense." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984) (internal citations omitted).

### A.  The Offenses in this Case Were Properly Joined.

As an initial matter, there is no question that all counts in the Indictment are properly joined, as the offenses charged are of a similar character and are parts of a common scheme.  Both sets of counts charge similar conduct.  Indeed, the Indictment charges that Jones and Herring committed armed robberies of two cell phone stores less than a week apart.  What's more, Jones wore the same clothing in both robberies (a hooded sweatshirt and a pair of black Helly Hansen snow pants), and Herring wore the same footwear—multi-colored New Balance sneakers.  Herring

carried a reebok fanny pack during the December 17, 2020 robbery, while Jones carried the fanny pack during the December 23, 2020 robbery. All of this clothing and footwear was recovered by law enforcement on December 23, 2020. Further, the getaway vehicle used during the December 17, 2020 robbery (a maroon minivan) was located by law enforcement at the Calverton street residence on December 23, 2020. Moreover, both robberies involved at least one firearm being pointed at victim customers/employees, the victims being forced into a back room in the stores, the safe of each store being unloaded, and numerous mobile phones being taken.

Given the commonality of participants, *modus operandi*, and evidence that would establish both robberies, all of the offenses charged in the Indictment were properly joined as offenses of similar character under Rule 8(a) and are part of a common scheme or plan. *See, e.g.*, *Acker*, 52 F.3d at 512–13 (bank robberies were of the same or similar character and joinder proper because, among other details, the robber wore a wig, glasses, and a straw hat for each of the four robberies that occurred within a nine-month time period); *United States v. Bosket*, No. 2:13-CR-111, 2013 WL 6189343, at *2 (E.D. Va. Nov. 25, 2013) (counts stemming from one robbery and one attempted robbery committed two months apart were properly joined, as both sets of counts charged similar conduct and crimes had common *modus operandi*). The similarity in character is also evidenced by the fact that violations of the same statutes were charged for the two robberies at issue in this case. *See Hawkins*, 776 F.3d at 208.

### B. Joinder Will Not Have a Prejudicial Effect Warranting Severance.

While Rule 14(a) permits the Court to sever counts properly joined under Rule 8(a), severance is rare. Indeed, it is required "only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d at 387 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *accord United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012) (noting that severance of properly joined counts is

"rare").   The party seeking severance shoulders the burden of demonstrating the requisite prejudice.  *See United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008).  Defendant comes nowhere close to meeting that heavy burden here.

Jones states that "due to the strength of the case for Counts Three and Four there is an unavoidable and serious risk that evidence will spill over into Counts One and Two, causing a jury to convict him—regardless of the lack of evidence."  ECF No. 72 at 4.  But this argument ignores the well-established principle that a defendant is not entitled to severance merely because separate trials would offer him a better chance of acquittal.  *See United States v. Hornsby*, 666 F.3d at 309; *Cardwell*, 433 F.3d at 387; *United States v. Akinkoye*, 185 F.3d 192, 197 (4th Cir. 1999).

Jones also claims that because "there is little or no factual overlap between the December 17th and 23rd robberies", there "would be only a limited amount [of] evidence of the joined crimes that would be mutually admissible in separate trials."  ECF No. 72 at 4.  Defendant's contention that there is little factual overlap is of course meritless given the commonality of participants, *modus operandi*, and evidence that would establish both robberies—already discussed above. What's more, Jones appears to be under the impression that he will suffer prejudice because the joinder of counts will permit the introduction of "other crimes" evidence that would be inadmissible if the counts were severed.  Put differently, Jones appears to be under the impression that if severance were granted, evidence relevant to one robbery would not be admissible at the trial on the counts related to the other robbery.  Not so.

The facts and circumstances of the December 17, 2020 robbery are intrinsic evidence of the December 23, 2020 robbery as they "arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial."  *United States v. Kennedy*, 32 F.3d 875, 885 (4th Cir. 1994) (quotation omitted).  Indeed, "[o]ther criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other

acts were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, at 87-88 (4th Cir. 1996) (internal quotation and citation omitted); *cf. United States v. Littles*, 688 F. App'x 321, 324 (6th Cir. 2017) (summary order) (district court properly admitted evidence of robbery by defendant on the night prior to the charged carjacking because, among other reasons, it was closely related in time and place to the charged carjacking).

Moreover, even if evidence of one robbery were deemed purely "other crimes" evidence, such evidence would still be admissible at Jones's trial for purposes unrelated to character, such as identity, absence of mistake, knowledge, and intent. *See* Fed. R. Evid. 404(b)(2); *Branch*, 537 F.3d at 341 (affirming district court's refusal to sever cocaine distribution counts from possession of firearm counts because evidence of defendant's earlier cocaine distribution was probative of defendant's knowledge, which he denied, of cocaine and firearm found in his vehicle); *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (holding evidence of other armed robbery committed one month before charged armed robbery admissible under Rule 404(b) because "two crimes of sufficient distinctive similarity can create a pattern or modus operandi"); *United States v. VanMetre*, 150 F.3d 339, 349-50 (4th Cir. 1998) (recognizing that extrinsic conduct is admissible under Rule 404(b) so long as it is "similar enough to be probative" of some relevant non-character issue, such as intent).

Finally, Defendant states that "because [he] could foreseeably be found guilty as to Counts Three and Four for the December 23rd robbery, the jury will undoubtably become confused as to how that conclusion does not automatically make him liable for Counts One and Two." ECF No. 72 at 4. But Jones fails to specify, let alone demonstrate, how and why jury confusion will result if severance is not granted. Such vague, conclusory, and speculative allegations are plainly insufficient to satisfy the burden of demonstrating prejudice. *See United States v. Najjar*, 300 F.3d 466, 473 (4th Cir. 2002) ("Speculative allegations as to possible prejudice do not meet the burden

of showing an abuse of discretion in denying a motion for severance." (quoting *United States v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978))).

In sum, "[t]rial courts routinely allow joinder of different . . . robbery counts against a single defendant in the same indictment." *Acker*, 52 F.3d at 514. The robberies here, committed within six days of each other, both targeting cell phone stores, with both crimes involving the brandishing at least one firearm and a similar *modus operandi*, and where clothing, footwear, firearms, and vehicles connected to both crimes were found in the same location shortly after the second robbery, are easily similar enough to fall within the ambit of Rule 8. Moreover, Jones has not and cannot make a showing of prejudice. Jones's motion to sever should therefore be denied.

## V.     The Defendant's Motion for Disclosure Pursuant to Fed. R. Evid. 404(b) Should be Denied as Premature.

Finally, Jones has filed a motion for disclosure of Rule 404(b) evidence. ECF No. 73. When introducing evidence under Rule 404(b), the trial judge can protect against creating undue prejudice by (1) providing a limiting instruction, when requested by a party, which explains to the jury the purpose of admitting evidence of other acts, and (2) enforcing the requirement in criminal cases that advance notice be given, when requested, of the intent to produce prior act evidence. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). In *Queen*, the court noted that when Rule 404(b) is administered according to those rules, "it will not . . . be applied to convict a defendant on the basis of bad character, or to convict him for prior acts, or to try him by ambush. But it will yet allow the admission of evidence of similar prior acts that are probative of elements of the offense in trial." *Id.*; *see also, United States v. Van Metre*, 150 F.3d 339 (4th Cir. 1998).

The Government has not yet prepared its trial strategy for the trial, which is scheduled to commence on March 6, 2023. The Government may file a motion pursuant to Fed. R. Evid. 404(b) at a later date, giving the Defendants reasonable pretrial notice and a chance to present any challenge to such evidence to the Court with adequate time to consider whether it should be

admitted at trial.  Jones's motion for disclosure of this evidence at this stage is premature, and should be denied.

**VI.     Conclusion**

For all of the above reasons, Defendants' motions should be denied.

Respectfully submitted,

EREK L. BARRON
United States Attorney

By:       /s/

Paul Riley
Michael Aubin
Assistant United States Attorneys
36 S. Charles Street, 4th Fl.
Baltimore, Maryland 21201