**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| DONTE ANTWAUN HERRING and | * | CRIMINAL NO. GLR-21-120 |
| XAVIER JEFFREY JONES, | * | |
| | * | |
| Defendants. | * | |
| | ******* | |

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The Government respectfully moves *in limine* for a ruling from the Court that:

(1) admits certain global positioning system (GPS) evidence from an ankle monitor that Defendant Donte Herring was required to wear while under the supervision of the Washington D.C. Court Services and Offender Supervision Agency (CSOSA) during the time frames of the robberies at issue in the case;

(2) precludes entirely the testimony of purported defense expert Spencer McInvaille, who will be offered by Defendant Herring as an expert in the analysis of GPS data; and

(3) precludes evidence or argument regarding potential punishment or concerning plea discussions, including whether any plea offer has been made or the terms of any such offer.

For the reasons that follow, the Government's motion should be granted in its entirety.

## BACKGROUND

### A. Defendants' Robbery of the Verizon Store on December 17, 2020 and the AT&T Store on December 23, 2020

This case involves Jones and Herring's armed robbery of two cell phone stores in Baltimore County, Maryland on December 17, 2020 and December 23, 2020.

On December 17, 2020, at shortly after 7:15 p.m., Herring and eventually Jones entered the Russell Cellular, Verizon store located at 3920 Washington Blvd., Suite 200 Halethorpe,

Maryland 21229.  After initially posing as customers browsing for cell phones, Jones and Herring announced a robbery and brandished firearms—pointing them in the direction of the victim employee.

Herring ordered the victim employee to take him and Jones to the store's safe, and the victim complied.  They ordered the victim to open the safe. He did so. Jones and Herring then removed various electronic devices from the safe, including multiple boxes of Apple cellular telephones, watches and iPads, along with cash from the store's register.  They then fled in a maroon minivan.  A still image of Herring (on the right)[1] and Jones (on the left) from the store's surveillance system is below.



On December 23, 2020, at approximately 1:37 p.m., Rico Dashiell—one of Jones's and Herring's co-conspirators—entered the AT&T store located at 10215 Reisterstown Road, Owings Mills, Maryland 21117.  Dashiell initially acted like a customer of the store but, after Jones and Herring entered the store, he brandished a firearm, pointed it towards the victim and announced a robbery.  Jones and Herring likewise brandished firearms after entering the store, pointing them at the victim customer and employees.

---

[1] Herring is wearing distinctive New Balance brand multi-colored sneakers.

Herring was wearing the same brightly colored New Balance sneakers that he wore during the December 17, 2020 robbery that occurred less than a week earlier.  Jones likewise wore the same clothing he wore during the earlier robbery—black Helly Hansen snow pants and a hooded sweatshirt.  Jones wore a Reebok brand satchel around his body, the same satchel that Herring wore during the December 17, 2020 robbery.

The robbers once again ordered a victim employee to open the store's safe containing phones, which they did.  Jones and Herring then proceeded to remove nearly all of the electronic devices from the safe.  The robbers also once again took cash from the store's register.

In addition to the stolen merchandise, the robbers also inadvertently took a 3SI GPS tracker within a cell phone box from the store.  As the robbers fled the store in the Kia vehicle, the tracker was activated and began being tracked by law enforcement.  Law enforcement received GPS information concerning the location of the GPS tracker, which they relayed to responding Baltimore County Police Department (BCPD) units, including aerial aviation units.

The Kia vehicle was ultimately tracked to 5724 Calverton Street, Catonsville, Maryland 21228, a single-family residence.  It arrived there at approximately 2:04 p.m.—less than a half hour after the robbery.   Aviation units observed and filmed the robbers—Jones, Herring, and Dashiell—outside the residence unloading the stolen merchandise from the AT&T store and bringing it into the residence.

Law enforcement then established a perimeter around 5724 Calverton Street and Herring, Jones, and Dashiell were ultimately arrested without incident at approximately 6:00 p.m.  Law enforcement then executed a state search warrant of the residence and seized, among other things, all the devices stolen during the robbery that had occurred just hours earlier; clothing, gloves, shoes, and headwear worn by Herring, Jones, and Dashiell during the earlier robberies;

the three firearms used by Jones, Herring, and Dashiell during the earlier robberies; and a black Reebok satchel used in connection both robberies too.

### B.  Herring's Supervision by CSOSA

At the time of each of the robberies at issue in this case, Herring was under Court-ordered supervision by CSOSA and was required to wear a GPS ankle monitor as part of his supervision. That monitor was provided to CSOSA by a company called Securus Monitoring ("Securus").

The Government has obtained GPS data from Securus pertaining to the ankle monitor worn by Herring and will offer testimony from an employee of Securus (Jeff Marino) concerning the interpretation of the data, as well as a member of the Federal Bureau of Investigation's Cellular Analysis Survey Team (Michael Fowler) regarding the mapping of the Securus GPS data, cell site data, and GPS data from 3SI tracker stolen by Defendants during the second robbery.

The trial evidence will show that Herring removed his ankle monitor during the time frame of the December 17, 2020 robbery and that, on December 23, 2020—during the time frame of the robbery that day—there was no GPS data available for the device because Herring had prevented it from acquiring a GPS signal.  Specifically, the trial evidence will show that on December 17, 2020: (1) Herring's ankle monitor traveled from the Washington D.C. area to the area of the robbery in Halethorpe, Maryland; (2) at approximately 6:40 p.m. the ankle monitor was in the immediate vicinity of the Verizon Wireless store that Herring and Jones would go on to rob about 35 minutes later; (3) the ankle monitor then traveled from the store to 5724 Calverton Street—the same location where the Defendants were arrested after the December 23, 2020 robbery—arriving there at approximately 6:49 p.m.; (4) at approximately 6:50 p.m., Securus's data reflects that a "Strap Tamper" was detected on December 17, 2020 from 6:50:37 Eastern Standard time to

6:51:21;[2] and (5) thereafter, the ankle monitor was stationary within 5724 Calverton Street until about 7:39 p.m., at which time it began moving at a rate of speed consistent with it being in a vehicle back towards Washington D.C.

As for the December 23, 2020 robbery, the trial evidence will show that (1) there were no GPS records available during the time frame of the robbery; (2) after the robbery (and after Herring and his co-defendants had arrived at 5724 Calverton Street), the Securus GPS records show that the ankle monitor was in 5724 Calverton Street; and that (3) Herring was wearing the GPS monitor when he was arrested at that location shortly after 6:00 p.m. that day.

Moreover, the trial evidence will show that Herring communicated with others about taking his ankle monitor off when he was not permitted to do so, as well as wrapping it in tinfoil. The trial evidence will likewise include a photo of Herring holding the disassembled GPS ankle monitor in his hand while wearing the same multicolored New Balance shoes he wore during the December 17 and December 23 robberies, as set forth below:



---

[2] The ankle monitor worn by Herring was attached by means of a fiber optic strap that, when tampered with, indicates as much in the Securus records.

## PROCEDURAL HISTORY

On April 22, 2021, a Grand Jury sitting in the District of Maryland returned a four count Indictment charging Herring and Jones with two Counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Counts One and Three); and (2) two counts of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Two and Four).  The Grand Jury further charged Dashiell with one count of Hobbs Act Robbery (Count Three) and one count of Brandishing a Firearm During a Crime of Violence (Count Four).

On September 23, 2022, the Court held a motions hearing.  ECF No. 89.  All the Defendant's motions were denied.  ECF No. 102.

The Government has noticed various expert witnesses whom it intends to call at trial, including Special Agent Michael Fowler, part of the FBI's Cellular Analysis Survey Team, Ex. 1, who, among other things, mapped cell sites, GPS data taken from the GPS tracker taken by the Defendants on December 23, 2023, and GPS data from Herring's Securus ankle monitor; and an employee of Securus, Jeff Marino, who will offer expert testimony on GPS technology as it is integrated into Securus's software, Ex. 2.

Herring has likewise noticed a purported expert, Spencer McInvaille, whom he intends to offer as an "expert in the analysis of global positioning data."  Ex. 3 (Disclosure);[3]  Ex. 4 (Report). McInvaille's report indicates that he intends to testify about, among other things, whether other witness's testimony is "speculation" and what is or is not "proof" that can be properly considered by the jury.  *See* Ex. 4 at 5 ("It is my opinion that Fowler and other witnesses may testify to what could be considered tampering *but would have to speculate* as to the actual action by the individual.

---

[3] Counsel for Herring has advised that McInvaille will only testify to the GPS records associated with Herring client's ankle bracelet and not to any cell site analysis or records from the GPS tracking device stolen from the AT&T store on December 23, 2020.

This alert is also *not proof the individual took intentional action* to tamper with the device.") (emphasis added); *id.* at 6 ("It is also my opinion that tampering was reported, though *no specific action can be determined from this alert alone. Opinions as to the removal of the device or specific action by the person wearing the device are speculation*.") (emphasis added).

Trial is scheduled to commence March 6, 2023 and is expected to last approximately 8 days.

**I.      Motion *In Limine* Concerning GPS Evidence from Defendant Herring's CSOSA Ankle Monitor.**

**A.   The GPS Evidence is Intrinsic to the Crimes Charged.**

The Government first respectfully requests that the Court admit evidence that Defendant Herring was required to wear a GPS ankle monitor while under the supervision of the CSOSA during the time frames of the robberies at issue in the case, along with the GPS records associated with monitor—as discussed above.  All this evidence is intrinsic evidence that the Court should admit.

"Rule 404(b) limits only the admission of evidence of acts extrinsic to the one charged, but does not limit the admission of evidence of intrinsic acts."  *United States v. Lightly*, 616 F.3d 321, 352 (4th Cir. 2010).  Prior-acts evidence is intrinsic if it "arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial."  *United States v. Kennedy*, 32 F.3d 875, 885 (4th Cir. 1994) (quotation omitted).  Evidence of "[o]ther criminal acts [is] intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged."  *United States v. Chin*, 83 F.3d 83, at 87-88 (4th Cir. 1996) (internal quotation and citation omitted).  Such "intrinsic act" evidence is ordinarily admissible as a matter of course.

This standard is easily satisfied here.  To establish the charged robberies, the Government must prove the identity of the perpetrators.  The GPS data from Herring's ankle monitor is inextricably linked with—and provide direct proof of—Defendant's involvement with the charged robberies here and will provide the jury with a more complete story of the events of December 17 and December 23, 2020:  Herring's presence in Baltimore County (rather than at or near his home in Washington D.C.), including near the Verizon store not long before its robbery on December 17, 2020 and at 5724 Calverton Street after both robberies.  Indeed, the GPS evidence provides insight into Defendant's locations before, during, and after the robberies at issue in this case.  *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) ("Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'"); *United States v. Bajoghli*, 785 F.3d 957, 964 (4th Cir. 2015) (district court abused its discretion in limiting government's proof to that which was directly relevant to one or more of 53 executions of fraudulent scheme charged in indictment, without taking into account relevance of uncharged conduct to overarching scheme, offered to show defendant's fraudulent intent and willful, guilty conduct).  While the specific offense that led to Herring having to wear the ankle monitor is extrinsic, the Government does not intend to elicit this information at trial, but rather instead the mere fact that Herring was under supervision by CSOSA and required to wear a monitor.

What's more, the GPS evidence tends to logically prove that Defendant was one of the individuals that committed the robberies on December 17 and December 23, 2020.  Where, as here, such evidence tends to logically prove or explain the circumstances surrounding a crime, admission is warranted as intrinsic evidence.  *See United States v. Lang*, No. CR 2015-0018,

2016 WL 3129142, at *4 (D.V.I. June 1, 2016) (GPS evidence and evidence linking Defendant to ankle monitor, including its installation on him, was intrinsic "because it places Defendant at the scene of the crime and thus directly aids in the Government's proof that Defendant committed the charged offenses"); c*f. United States v. Byers*, 649 F.3d 197, 207–210 (4th Cir. 2011) (in trial stemming from conspiracy and murder of witness to prevent him from testifying against defendant in upcoming state murder trial, testimony that defendant shot another person (Coleman) on same street block where original victim (Haynes) was killed was properly admitted because it showed that defendant shot Coleman and Haynes because of conflicts over drugs on defendant's drug turf and made witness's identification of defendant as original victim's killer "much more certain"); *Basham*, 561 F.3d at 327 (in prosecution for carjacking and kidnapping resulting in death, evidence of defendant's drug and alcohol use and sexual relationship with his girlfriend was admissible to "complete the story of the crime," because relationship put into context defendant's decision to give victim's ring to girlfriend and to write inculpatory letters to her from prison).

Nor is such intrinsic evidence unfairly prejudicial. Intrinsic and extrinsic evidence are subject to Fed. R. Evid. 403, which excludes relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. *United States v. Blauvelt*, 638 F.3d 281, 292 (4th Cir. 2011). "Unfair prejudice" is an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Because the admission of relevant evidence is encouraged, exclusion under Rule 403 is rarely warranted. *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007). Indeed, the admission of evidence does not result in unfair prejudice under Fed. R. Evid. 403 where it does not involve conduct any more sensational or disturbing than the crimes

with which the defendant was charged.  *See, e.g.*, *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995); *United State v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).  Here, the fact that Herring was under the supervision of CSOSA and required to wear an ankle monitor are not more sensational or disturbing than the conduct giving rise to the indictment—two armed robberies.  The evidence is intrinsic and should be admitted.

### B.  Even if the Evidence is Not Intrinsic, it is Still Admissible Under Fed. R. Evid. 404(b).

Even if the GPS evidence is not intrinsic—and it is—it is still nevertheless admissible pursuant to Fed. R. Evid. 404(b).  Federal Rule of Evidence 404(b) "prohibits evidence of other crimes, wrongs, or acts solely to prove a defendant's bad character, but such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (internal quotation marks, citations, and alterations omitted).  The rule is one of "inclusion, 'admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.'"  *United States v. Byers*, 649 F.3d 179, 206 (4th Cir. 2001) (quoting *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir. 2001)).

The test for admissibility under Rule 404 (b) has three parts.  *First*, the evidence must be relevant to an issue other than character, such as identity, opportunity, knowledge, modus operandi, or intent.  *United States v. Siegel*, 536 F.3d 306, 317 (4th Cir. 2008).  Evidence is relevant if it has "a tendency to show that any consequential act is more probable or less probable than it would be without the evidence." *E.g.*, *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996)).  *Second*, the evidence must be "necessary," in that it is an essential part of

the crimes on trial or furnishes part of the context for the crimes.  *Siegel*, 536 F.3d at 319.[4]

*Finally*, the evidence must be reliable.  *Siegel*, 536 F.3d at 317.  And it likewise must satisfy the

requirement in Rule 403 that the probative value of the evidence must not be "substantially

outweighed" by unfair prejudice.  *Id.* at 319.

All these requirements are satisfied here, and indeed courts have routinely held that such

GPS ankle monitor evidence—if not intrinsic—is admissible under 404(b).  *See United States v.*

*Hemphill*, 642 F. App'x 448, 453 (5th Cir. 2016) (no abuse of discretion for district court to

admit evidence of defendant's GPS ankle monitor under Fed. R. Evid. 404(b) as it constituted

evidence of identity and opportunity); *Lang*, 2016 WL 3129142, at *5-7 (same); *cf. Longoria v.*

*State*, 2014 WL 2922236, *3 (Tex. App. - Beaumont, June 25, 2014) (finding no error when trial

court admitted GPS evidence from ankle monitor when it was probative to identity).

First, the evidence is highly relevant, since it helps to establish identity and opportunity—

that Herring was one of the masked individuals that had the opportunity to and did rob the cell

phone stores on December 17 and December 23, 2020.  Next, the evidence is necessary because

it was "an essential part of the crimes on trial" and because it "furnishe[d] part of the context of

the crime." *Mark*, 943 F.2d at 448 (internal quotation marks and citations omitted).  Defendant

will most assuredly pursue a defense that puts, among other things, his state of mind and identity,

at issue.  Accordingly, the Court should allow the government to introduce this relevant evidence

on the issue of his state of mind and identity.  *See, e.g.*, *Byers*, 649 F.3d at 206 (cross-

examination of government witnesses created a significant credibility issue which made the

404(b) evidence necessary).   Finally, the proffered evidence here satisfies the element of

reliability.  The reliability of the evidence will be established by a preponderance of the

---

[4] That the evidence was "not critical to the prosecution's case [] does not render it unnecessary for purposes of Rule 404(b)." *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010).

evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988) (standard of proof for prior acts under Rule 404(b) is preponderance of the evidence), and, in any event, defense counsel will have the ability to test its reliability at trial.

Thus, even if the Court determines that the GPS evidence is not intrinsic evidence, it is still nevertheless admissible under Fed. R. Evid. 404(b). Likewise, for the reasons already discussed above, no unfair prejudice will result were the Court to admit evidence concerning the armed robbery. In any event, a curative instruction for any 404(b) evidence that is admitted—potentially given both at the time the evidence is introduced and at the end of the case—will ensure that the evidence is not misused by the jury and will decrease the potential for any prejudice.

## II.     Motion *in Limine* Seeking Preclusion Of Testimony Of Spencer McInvaille.

The Government next moves to preclude in its entirety the proposed testimony of Spencer McInvaille, whom Herring intends to offer as an "expert in the analysis of global positioning data." Ex. 3 (Notice); Ex. 4 (Report). The Court should preclude McInvaille's testimony in its entirety because McInvaille seeks to opine on (1) legal matters that are the exclusive province of the Court such as what is and what is not speculation by Government witnesses and what can and cannot be considered by the jury as proof with respect to the crimes charged in this case; and (2) matters that he is not qualified to opine on, and that constitute his unreliable mere *ipse dixit* in any event.

### A.  Applicable Law.

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), provides the framework for analyzing the admissibility of expert testimony. The Court in *Daubert* held that, to be admissible, expert testimony must constitute scientific knowledge which will assist the trier of fact to understand or determine a fact in issue. *Daubert* requires district

courts to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue."  509 U.S. at 592-93.

> Federal Rule of Evidence 702 governs expert testimony, as follows:
>
> > A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> >
> > > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > >
> > > (b) the testimony is based on sufficient facts or data;
> > >
> > > (c) the testimony is the product of reliable principles and methods; and
> > >
> > > (d) the expert has reliably applied the principles and methods to the facts of the case

The party that proffers expert testimony bears the burden of showing that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).  A court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. *See  General Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

Trial courts serve as "gatekeepers" regarding the admissibility of expert testimony.  Under Rule 702, the Court exercises this gatekeeping responsibility to exclude unreliable or otherwise inadmissible expert testimony, regardless of whether the proffered expert testimony is scientific in nature. *See  Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999);  *Daubert* 509 U.S. at 579; FED. R. EVID. *702* Advisory Comm. Notes ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in

*Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.").

As gatekeeper, the district judge "must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019) (citing *Daubert*, 509 U.S. at 589); *McCoy v. Biomet Orthopedics, LLC*, 2021 U.S. Dist. LEXIS 13716, at *25-26 (D. Md. 2021). The trial court makes pretrial determinations "of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. This gatekeeper role helps to ensure that the expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Id*. at 597; *see also Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 577 (4th Cir. 2017).

The Supreme Court has held that reliability is a touchstone of admissibility under *Daubert*. *Daubert* lists five non-exhaustive factors for evaluating reliability: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *see Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019); *United States v. Crisp*, 324 F.3d 261, 265-66 (4th Cir. 2003). These factors are not exhaustive, and the trial court need not rely on the *Daubert* factors in conducting its gatekeeping function to determine that evidence is unreliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999) (holding that testimony of engineers in a products liability action was unreliable because it merely relied on visual inspection of a tire).

The Fourth Circuit has applied *Daubert*'s reliability test and held that expert testimony is not sufficiently reliable where it is simply based on the witness's belief or speculation. Specifically, the Fourth Circuit holds that "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *see also Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200-01 (4th Cir. 2001) (affirming exclusion of proposed expert whose testimony was nothing more than "a wholly conclusory finding based upon his subjective beliefs"); *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (holding that an engineer's testimony about a product defect was inadmissible because it was speculative instead of basing his conclusion in calculations, analysis, investigations, or tests). These precedents recognize that an expert's subjective speculation is not subject to rigorous testing or a scientific methodology; it is simply the *ipse dixit* of the proposed expert. *See Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 645 (4th Cir. 2018) (affirming exclusion of expert whose proffered opinion "appeared closer to an ipse dixit than a reasoned scientific analysis").

Under *Daubert*, a trial court is not required to accept the testimony of every expert with adequate credentials who can be found to utter some version of the phrase: "In my opinion it is more likely than not (or 80% probable) that X was caused by Y." *See Glaser v. Thompson Medical Company*, 32 F.3d 969, 980 (6th Cir. 1994). "Rather, such testimony must be supported by a reasonable chain of evidence, not speculation, and it is subject to the scrutiny of the trial court." *Id*. Expert testimony should be excluded when it is based on assumptions which are speculative and not supported by reliable information.

Relatedly, Federal Rule of Evidence 704 permits an expert's opinion to "embrace[] an ultimate issue," so long as that issue is a factual one; however, Rule 704 does not allow a witness

to define legal terms or express legal conclusions.  Fed. R. Evid. 704(a);  *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (rejecting expert testimony that described a legal standard). Indeed, "testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (citations omitted).  Accordingly, expert witnesses may not testify about the proper interpretation of law.  *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988). Rather, "it is the responsibility—and the duty— of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law." *Id.* And so, the Court must engage in a "case-specific inquiry of the charges, the testimony, and the context in which it was made, to determine whether proposed expert testimony constitutes an impermissible legal conclusion." *United States v. Campbell*, 963 F.3d 309, 314 (4th Cir. 2020).

### B.  Analysis.

The Court should exclude McInvaille's proposed testimony in its entirety.  The opinions Herring would have Mr. McInvaille offer are as follows, bolded:

- Agent Fowler provided his findings within a report. This report shows similar demonstrative exhibits as above. Fowler notes that during the time period 6:50 PM and 6:51 PM tampering is shown in the GPS records. The records do indicate that the device reports tampering during this time. However, the GPS records cannot report any further details on the event. **It is my opinion that Fowler and other witnesses may testify to what could be considered tampering but would have to speculate as to the actual**

**action by the individual. This alert is also not proof the individual took intentional action to tamper with the device.**  Ex. 4 at 5.

- I have analyzed the records in this case and the maps contained are an accurate reflection of the data in those records. **It is my opinion that the device was not at the incident location at the time reported, rather the device was reported being at or near 5724 Calverton St, Catonsville, MD during the entire incident. It is also my opinion that tampering was reported, though no specific action can be determined from this alert alone. Opinions as to the removal of the device or specific action by the person wearing the device are speculation.**  Ex. 4 at 6.

- Further, these alerts should be accompanied by reports from the monitoring Agent who followed up on the alerts for tampering. **It is my experience that these devices, when installed properly, are not removed without causing physical damage to the device. If the device can be removed without damaging the device, such as cutting or removing the strap, the device was not properly installed nor was the device maintained properly by the monitoring Agent.**  Ex. 4 at 5.

These opinions essentially fall into two categories:  (1) legal opinion testimony about what constitutes "speculation" by other witnesses and what the jury may consider as "proof" in considering the evidence in this case, including evidence bearing upon the Government's contention that Herring removed his ankle monitor before robbing the Verizon Wireless store on December 17, 2020; and (2) opinions concerning the proper installation of a GPS ankle monitor,

its maintenance by a supervising officer, and the circumstances under which it can be removed. None of these opinions is permissible here.

Regarding the first category of opinions, McInvaille should not be permitted to opine on whether testimony of Government witnesses constitutes "speculation."  It is the Court's role to decide whether testimony constitutes improper speculation—not McInvaille's.  *See, e.g.*, *Samuel v. Ford Motor Co.*, 112 F. Supp. 2d 460, 470 (D. Md. 2000) ("If the proffered expert testimony is speculation, or conjecture, it is not relevant. This is because it has no tendency to make a significant fact more or less probable than otherwise, as guesswork is the very antithesis of probability. . . .  Thus, if speculative or conjectural, the opinion of an expert should be excluded *by the trial judge* under Rule 104(a).") (emphasis added); *cf. United States v. Blair*, No. CR ELH-19-00410, 2021 WL 5040334, at *6 (D. Md. Oct. 29, 2021) ("On the other hand, *a court should exclude* testimony based on belief or speculation, or when not supported by the record.") (citations and internal quotation marks omitted) (emphasis added).  Nor should the Court permit McInvaille to opine on what "proof" that can be considered by the jury and what inferences they are permitted to draw.  Yet that is what Herring would have McInvaille do here.  Ex. 4 at 5 ("This alert *is also not proof* the individual took intentional action to tamper with the device."); Ex. 4 at 6 ("It is also my opinion that tampering was reported*, though no specific action can be determined from this alert alone*.") (emphasis added).

To be clear, the Government does not intend to have Mr. Marino (of Securus) opine that Mr. Herring in fact took the monitor off.  Instead, Mr. Marino will testify about the circumstances under which a "Strap Tamper Alert" on the monitor may be triggered, which includes removing or attempting to remove the monitor altogether, and explain the data associated with Herring's ankle monitor, including the existence of various "Strap Tamper

Alerts," including before the December 17, 2020 robbery of the Verizon Wireless store and the fact that, thereafter, the ankle monitor was stationary within 5724 Calverton Street until about 7:39 p.m.

However, the Government does intend to *argue* that Herring removed his ankle monitor based on the above chronology, the photo of Herring holding the disassembled GPS ankle monitor in his hand while wearing the same multicolored New Balance shoes he wore during the December 17 and December 23 robberies, and the fact that Herring in text messages talks about removing the monitor and wrapping it in tinfoil.

The Court will of course instruct the jury on the inferences they are permitted to draw based on the evidence. *E.g.*, Government's Proposed Jury Instructions, Local Boilerplate at 9 (ECF No. 95) ("While you must base your verdict solely on the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in the case."). Simply put, McInvaille's proposed legal testimony seeks to indicate to the jury which inferences are permissible for the jury to draw from the evidence and ultimately invades the province of the Court. Accordingly, the Court should not permit them.

As for the second category of McInvaille's opinions—his opinions regarding the proper installation of a GPS ankle monitor, its maintenance by a supervising officer, and the circumstances under which it can be removed—McInvaille is not qualified to render these opinions and, even if he were, the opinions constitute merely his *ipse dixit* and thus are impermissible on that ground too.

For starters, it does not appear that McInvaille is evenly remotely qualified to render these opinions.  His CV does not indicate *any* experience with GPS ankle monitors—including their installation, operation, or removal—at all, let alone experience with the particular type of monitor at issue here.  *See* Ex. 4.  Nor does he appear to have experience monitoring individuals who are required to wear GPS ankle monitors.   As Judge Hollander noted in *United States v. Blair*:

> an expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994); *see also Smith v. Central Admixture Pharm. Servs., Inc.*, AW–07–3196, 2010 WL 1137507, at *3 (D. Md. Mar. 19, 2010) ("It is well established that 'general expertise is not sufficient to qualify [an expert] to testify on a matter that requires particularized knowledge, training, education, or experience.' " (quoting *Fitzgerald v. Smith & Nephew Richards, Inc.*, JFM-95-3870, 1999 WL 1489199, at *3 (D. Md. Dec. 30, 1999), aff'd, 11 F. App'x 335 (4th Cir. 2001))).

No. CR ELH-19-00410, 2021 WL 5040334, at *7 (D. Md. Oct. 29, 2021).

McInvaille does not work with GPS ankle monitors on a daily basis—or at all.  He is and has never been a parole officer or pre-trial supervision officer.  He has some experience as a law enforcement officer before he began working at Envista Forensics, Ex. 3 at 5, and appears to have some experience with GPS data more broadly, *id.* at 4.  But his CV is devoid of any information that qualifies him to opine on the installation and removal of ankle monitors and the proper practices of the agents that monitor GPS ankle monitor activity.  "[E]xpertise in one field does not qualify a witness as an expert in other fields." *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 322 (D. Md. 2017); *see also Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001).

Further, even if McInvaille were qualified to offer these opinions—and he is not—the opinions are unreliable because they are merely his *ipse dixit*.  Though he was required by Rule

16 to provide the reasons and bases for all of his opinions,[5] McInvaille provides no rationale, methodology, reason, or basis for his opinion at all, except his statement, "It is my experience." Ex. 4 at 5. This is insufficient, especially given that—based on his CV—he has little to no experience with these devices at all. At bottom, McInvaille's statement is a conclusory one that is not supported by any reliable methodology. "Without testing, supporting literature in the pertinent field, peer reviewed publications[,] or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so,'" what is also referred to as the "ipse dixit," of the expert. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 292 (4th Cir. 2021) (emphasis added). Indeed, nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Simply put, "[e]xpert testimony rooted in subjective belief or unsupported speculation does not suffice." *Zuckerman v. Wal–Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 590) (internal quotation marks omitted).

That is precisely what Defendant has proffered. McInvaille's opinions that "It is my experience that these devices, when installed properly, are not removed without causing physical damage to the device," Ex. 3 at 5, is based on nothing more than the *ipse dixit* of McInvaille. Similarly, his opinion that "If the device can be removed without damaging the device, such as cutting or removing the strap, the device was not properly installed nor was the device maintained properly by the monitoring Agent," *id.*, suffers from the same flaw. It is so because McInvaille says so. For that reason, it too should be excluded.

---

[5] *See* Fed. R. Crim. P. 16(b)(1)(C)(iii).

For all these reasons, the Court should exclude the proposed expert testimony of McInvaille in its entirety.

**III.     Motion *In Limine* Regarding References to Plea Negotiations and Punishment.**

The Government next moves to preclude evidence or argument regarding potential punishment or, relatedly, any evidence or argument concerning plea discussions, including whether any plea offer has been made or the terms of any such offer.  Such evidence and argument are irrelevant to the issue of a defendant's guilt or innocence.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."  *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991); *Shannon v. United States*, 512 U.S. 573, 579 (1994) (providing jurors with information regarding the potential sentence "invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion").  So too here.

Thus, because any evidence or argument concerning plea discussions and punishment are irrelevant, highly prejudicial, and not an area of proper concern for the jury, the Court should grant the Government's motion.

**IV.     CONCLUSION**

For all the above reasons, the Government's motions *in limine* should be granted.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:     _____/s/_____

Paul A. Riley
Michael F. Aubin
Assistant United States Attorneys
36 S. Charles Street, 4th Fl.
Baltimore, Maryland 21201